UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

EDGARS SERMUKS and OLGA OZTURK, Individually and On Behalf Of All Others Similarly Situated,

Plaintiffs,

-against-

ORION CATERERS, INC., EUGENE STRASCHLOW, and TSILYA POVELETSKIY,

Defendants.

---------------------------------------------------------X

REPORT AND RECOMMENDATION

15 CV 6461 (RJD)(RML)

LEVY, United States Magistrate Judge:

Plaintiffs Edgars Sermuks and Olga Ozturk ("plaintiffs") commenced this wage and hour action on November 11, 2015 against defendants Orion Caterers, Inc., Eugene Straschlow, and Tsilya Poveletskiy ("defendants"). (See Complaint, dated Nov. 11, 2015 ("Compl.").) Defendants have failed to answer or otherwise move with respect to the complaint. On March 14, 2016, the Clerk of the Court entered a certificate of default against defendants. (See Certificate of Default, dated Mar. 14, 2016.) On June 16, 2016, plaintiffs filed a motion for default judgment (see Notice of Motion for Default Judgment, dated June 16, 2016), which the Honorable Raymond J. Dearie, United States District Judge, referred to me on August 22, 2016 (see Order, dated Aug. 22, 2016). For the reasons explained below, I respectfully recommend that plaintiffs' motion be granted and that default judgments be entered against all defendants. Regarding damages, I recommend that Sermuks be awarded $40,893.20, consisting of $144 in unpaid overtime compensation, $16,302.60 in retained gratuities, $3,000 in statutory penalties for wage notice violations, $5,000 in statutory penalties for wage statement violations, and

$16,446.60 in liquidated damages under state law. I further recommend that he be awarded prejudgment interest at the rate of nine percent per annum on his compensatory damages of $16,446.60 accruing from June 24, 2015 to the date of the entry of judgment. With respect to Ozturk, I recommend that she be awarded $42,405.46, consisting of $10 in unpaid overtime compensation, $17,117.73 in retained gratuities, $3,150 in statutory penalties for wage notice violations, $5,000 in statutory penalties for wage statement violations, and $17,127.73 in liquidated damages under state law. I also recommend that she be awarded prejudgment interest on her compensatory damages of $17,127.73 at the rate of nine percent per annum accruing from July 1, 2015 to the date of the entry of judgment. Finally, I respectfully recommend that plaintiffs be jointly awarded $2,720 in attorney's fees and $475 in costs.

**BACKGROUND AND FACTS**

Plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), N.Y. LAB. LAW §§ 190 et seq., 650 et seq. (See Compl. ¶¶ 1-2.) According to the uncontested complaint, defendants own and operate a catering hall business at 2555 McDonald Avenue, Brooklyn, New York. (See id. ¶¶ 8, 9-10, 14.) Defendant Orion Caterers is a New York State domestic corporation with its principal office and place of business located at the aforementioned address. (Id. ¶ 8.) Defendants Straschlow and Poveletskiy are owners, chairpersons, chief executive officers, managers, and/or operators of defendant Orion Caterers. (Id. ¶¶ 9-10.) During the relevant time period, they exercised the power to hire, fire, and control the wages and working conditions of plaintiffs. (Id. ¶¶ 9-10.)

Plaintiffs allege that they were employed by defendants as banquet waiters and bartenders for certain periods in 2015. (Id. ¶¶ 6-7.) They claim that defendants: (1) failed to

compensate them at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty per workweek (id. ¶¶ 19-21, 45-54); (2) retained gratuities and "charges purported to be gratuities" in violation of the NYLL (id. ¶¶ 22-26, 55-58); and (3) failed to furnish proper wage notices and wage statements as required by the NYLL (id. ¶¶ 27-28, 59-62).

Defendants Straschlow and Poveletskiy were properly served via "deliver and mail" on November 17 and 18, 2015. (See Affirmation of Gennadiy Naydenskiy, Esq. in Support of Request for Certificate of Default, dated Jan. 6, 2015 [*sic*] ("Naydenskiy 55(a) Aff."), ¶ 2; Affidavits of Service of Tetyana Shevchukevych, sworn to Nov. 18, 2015, annexed as Ex. A to Naydenskiy 55(a) Aff.); see also N.Y. C.P.L.R. § 308(2). Orion Caterers was properly served via the New York State Secretary of State on January 14, 2016. (See Status Report, dated Jan. 20, 2016; Affidavit of Service of Sean Warner, sworn to Jan. 14, 2016, annexed as Ex. A to Affirmation of Gennadiy Naydenskiy, Esq. in Support of Request for Certificate of Default, dated Feb. 22, 2015 [*sic*]); see also N.Y. BUS. CORP. LAW § 306(b)(1). On March 14, 2016, the Clerk of the Court entered a certificate of default against all defendants. (Certificate of Default, dated Mar. 14, 2016.)

Plaintiffs filed the instant motion on June 16, 2016. They request a total damage award of $82,424.46, exclusive of interest. (See Declaration of Gennadiy Naydenskiy, Esq., dated June 16, 2016 ("Naydenskiy Decl."), ¶¶ 9-11; Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, dated June 16, 2016 ("Pls.' Mem."), at 7-16.) The court held a damages hearing on November 18, 2016, at which plaintiffs testified through a Russian interpreter. (See Minute Entry, dated Nov. 18, 2016; Transcript of Proceedings held on Nov. 18,

2016, filed Dec. 19, 2016 ("Tr.").) Despite ample notice (see Orders, dated Sept. 8 & Sept. 27, 2016), defendants did not appear at the hearing.

## DISCUSSION

### A. Legal Standard

It is well settled that a party's default "is deemed to constitute a concession of all well pleaded allegations of liability . . . ." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)); see also Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Nonetheless, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases); see also Au Bon Pain, 653 F.2d at 65 (explaining that the district court "need not agree that the alleged facts constitute a valid cause of action").

Furthermore, a party's default "is not considered an admission of damages." Greyhound, 973 F.2d at 158 (citing Flaks, 504 F.2d at 707); see also Au Bon Pain, 653 F.2d at 65 ("[A]t the inquest, the court should have accepted as true all of the factual allegations of the complaint, except those relating to damages."). Therefore, "[i]f the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'" Gunawan, 897 F. Supp. 2d at 83 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). Additionally, because it is the employer's obligation to maintain employment records, "[w]hen a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours are presumed to be correct."

Id. (citing Chun Jie Yin v. Kim, No. 07 CV 1236, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008); see also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946).

B. Liability

Plaintiffs assert one claim for unpaid overtime compensation pursuant to the FLSA, 29 U.S.C. § 207(a). (See Compl. ¶¶ 45-49.) Plaintiffs bring claims pursuant to the NYLL for: (1) unpaid overtime compensation, N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2; (2) retention of gratuities and "charges purported to be gratuities," N.Y. LAB. LAW § 196-d; and (3) failure to furnish wage notices and wage statements, N.Y. LAB. LAW §§ 195(1), (3). (Compl. ¶¶ 50-62.)

1. FLSA

In order to be held individually liable under the FLSA, Straschlow and Poveletskiy must be "employers" within the broad meaning of 29 U.S.C. § 203(d). See Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d at 19, 35-37 (E.D.N.Y. 2015). In Carter v. Dutchess Community College, 738 F.2d 8, 12 (2d Cir. 1984), the Second Circuit Court of Appeals set forth a series of non-exclusive factors to assist in evaluating the "economic reality" of a given relationship to determine whether an employment relationship exists. These relevant factors include whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. Carter, 738 F.2d at 12; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

In the uncontroverted complaint, plaintiffs allege that Straschlow and Poveletskiy exercised "the power to hire, fire, and control [plaintiffs'] wages and working conditions."

(Compl. ¶¶ 9-10.) Thus, plaintiffs have sufficiently alleged defendants' liability as employers pursuant to the FLSA. See Fermin, 93 F. Supp. 3d at 36.

Further, in order to establish defendants' liability under the FLSA, plaintiffs must sufficiently allege that Orion Caterers was an "enterprise engaged in commerce or in the production of goods for commerce" within the applicable statutory definition, 29 U.S.C. § 203(s)(1). Here, plaintiffs allege that defendants "grossed more than $500,000" annually during the relevant time period. (Id. ¶ 12.) Further, although not specifically alleged in the complaint, it is reasonable to assume that some of the goods or materials that defendants' employees handled or sold originated out of state. See Fermin, 93 F. Supp. 3d at 33-34 (E.D.N.Y. 2015); Huerta v. Victoria Bakery, No. 10 CV 4754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012). In sum, I conclude that plaintiffs' complaint asserts a viable claim for unpaid overtime compensation pursuant to the FLSA.

2. NYLL

It is well established that the NYLL "mirrors the FLSA in most aspects, including its wage and overtime compensation provisions." Jemine v. Dennis, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012); see also Gunawan, 897 F. Supp. 2d at 84-85. Thus, "[c]ourts have interpreted the definition of 'employer' under the NYLL coextensively with the definition used by the FLSA." Fermin, 93 F. Supp. 3d at 37 (internal quotation marks and citations omitted). Unlike the FLSA, however, the NYLL does not require plaintiffs to show a nexus with interstate commerce or that the employer has any minimum amount of sales. See Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *22 (S.D.N.Y. Mar. 19, 2015). Accordingly, for the reasons explained supra, I find that the uncontroverted complaint establishes defendants' liability pursuant to the NYLL's overtime compensation provision.

Plaintiffs also allege that defendants retained gratuities and "charges purported to be gratuities" in violation of NYLL § 196-d. (See Compl. ¶¶ 23-26; 55-58.) Specifically, plaintiffs allege that defendants "regularly charge(d) [their] patrons a 10% or 15% service charge" and "retained all or part of the service charges charged." (Id. ¶¶ 24-25.) NYLL § 196-d provides that

> [n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or any charge purported to be a gratuity for an employee.

N.Y. LAB. LAW § 196-d.[1] In Samiento v. World Yacht Inc., the New York Court of Appeals held that "a charge that is not a voluntary payment may be a 'charge purported to be a gratuity' within the meaning of the statute." Samiento v. World Yacht Inc., 883 N.E.2d 990, 991 (N.Y. 2008). The court further announced that "the standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of a reasonable customer . . . ." Id. at 994; see also Coptantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 282-83 (S.D.N.Y. 2011).

Subsequent to Samiento, the New York State Labor Department promulgated regulations interpreting § 196-d. N.Y. COMP. CODES R. & REGS. tit. 12, § 146-2.18(b) provides that "[t]here shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service' is a charge purported to be a gratuity." N.Y. COMP. CODES

[1] The statute also provides that "[n]othing in this subdivision shall be construed . . . as affecting practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees, nor to the sharing of tips by a waiter with a busboy or similar employee." N.Y. LAB. LAW § 196-d. This language does not exempt the banquet industry from the prescriptions of § 196-d and allow employer retention of service charges. See Samiento v. World Yacht Inc., 883 N.E.2d 990, 995 (N.Y. 2008).

R. & REGS. tit. 12, § 146-2.18(b). The regulations further prescribe, inter alia, that "[a] charge for the administration of a banquet, special function, or package deal shall be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip" and "[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity." N.Y. COMP. CODES R. & REGS. tit. 12, § 146-2.19(a), (b); see also Copantitla, 788 F. Supp. 2d at 286 ("[U]nder New York law, an agency's interpretation of the statute it administers, if not unreasonable or irrational, is entitled to deference.") (internal quotation marks and citation omitted).

Here, as a consequence of their default, defendants have made no showing to rebut the presumption that the "service charge" they regularly charged patrons was a "charge purported to be a gratuity" that could not be retained by the employer. Accordingly, I find that plaintiffs have established defendants' liability pursuant to NYLL § 196-d.

Finally, plaintiffs allege that defendants failed to furnish them with a statement with every payment of wages listing the wage information prescribed by NYLL § 195(3). (Compl. ¶¶ 27, 61). Plaintiffs further allege that defendants failed to furnish notices at the time of their hiring listing the information set forth in § 195(1). (Compl. ¶¶ 28, 60.) These uncontroverted allegations state claims for relief pursuant to the NYLL.

C. Damages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan, 897 F. Supp. 2d at 88 (internal marks and citations omitted); see also Kim,

2015 WL 2222438, at *25 (explaining that, where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l, Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

1. Unpaid Overtime Compensation

Plaintiffs request $300 in unpaid overtime compensation for Sermuks and $175 in unpaid overtime compensation for Ozturk. (Naydenskiy Decl. ¶¶ 9-10.) Plaintiffs are entitled to overtime compensation under both the FLSA and NYLL at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty during a workweek. See 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

Sermuks testified that he began working for defendants as a banquet waiter and bartender in early April 2015, presumably on Friday, April 3. (See Tr. at 5.) His testimony further suggests that his last day of employment was on Saturday, September 12, 2015. (See id. at 7, 10.) With respect to his schedule, Sermuks testified that two weeks out of each month he worked on Fridays and Saturdays. (Id. at 4.) He further testified that the other two weeks out of each month he worked Fridays, Saturdays, and Sundays. (Id.) The evidence further indicates that his hours were generally from 3:00 p.m. to 5:00 a.m. (see id. at 4; Declaration of Edgars Sermuks, dated June 10, 2016 ("Sermuks Decl."), ¶¶ 6-7, annexed as Ex. D to Naydenskiy

Decl.), a shift of fourteen hours.[2] This amounts to a forty-two hour workweek on those presumably alternating weeks when Sermuks worked for three days. There are twenty-three weeks between April 3, 2015 and September 10, 2015. Based on his testimony, Sermuks also worked two additional days, September 11, a Friday, and September 12, a Saturday, before his employment ended. I therefore estimate that Sermuks worked twelve forty-two hour three-day workweeks during his employment period. This amounts to twenty-four hours of overtime. Finally, Sermuks testified that he was paid $12.00 an hour throughout his employment. (Tr. at 7.) Thus, I respectfully recommend that he be awarded $144 in unpaid overtime compensation (24 overtime hours x $6.00 overtime premium).

Ozturk testified that she began working for defendants primarily as a banquet waitress around mid-March 2015 and that her employment ended on an indeterminate date in October 2015. (Id. at 12, 16.) Like Sermuks, her hours were generally from 3:00 p.m. to 5:00 a.m. (See id. at 12-13.) During the hearing, Ozturk testified that she worked a three-day workweek only on one occasion during her employment, and that she was paid $10.00 an hour. (See id. at 15, 17.) Therefore, I respectfully recommend that Ozturk be awarded $10 in unpaid overtime compensation (2 overtime hours x $5.00 overtime premium).

2. Retained Service Charges

Plaintiffs request an award of $13,585.50 in unlawfully retained gratuities for Sermuks and $17,117.73 in unlawfully retained gratuities for Ozturk. (Naydenskiy Decl. ¶¶ 9-10.) Plaintiffs have submitted the declaration of Yevgeniy Rozinger, whose wedding defendants hosted in 2013. (See Declaration of Yevgeniy Rozinger, dated June 16, 2016 ("Rozinger Decl."), annexed as Ex. E to Naydenskiy Decl.) Rozinger asserts that he was charged a total of

[2] I note that plaintiffs do not assert a claim for spread-of-hours violations under the NYLL. (See Compl.)

$43,844 for the occasion, which included 190 adult guests and twenty-two children under the age of twelve. (Id. ¶ 3.) He asserts that the total charge included a ten percent service charge, which amounted to $3,804 (Rozinger apparently voluntarily also added $2,000 additional gratuity to his bill). (Id.) Rozinger also asserts that he attended a New Year's Eve function hosted by defendants, at which a ten percent service charge was also added to the bill. (Id. ¶¶ 4-5.)

Both plaintiffs have submitted declarations asserting that "[a] typical occasion ha[d] approximately 200 guests" and was staffed by about thirteen or fourteen waiters and bartenders combined. (Sermuks Decl. ¶¶ 11-12; Declaration of Olga Ozturk, dated June 16, 2016 ("Ozturk Decl."), ¶¶ 11-12, annexed as Ex. D to Naydenskiy Decl.) Plaintiffs calculate retained gratuities damages by relying on the $3,804 Rozinger paid as a service charge because his wedding included approximately 200 guests. (See Naydenskiy Decl. ¶¶ 9-10.) Plaintiffs divide the $3,804 service charge by fourteen to account for each member of the wait staff working during a "typical occasion." This amounts to a per diem retained gratuity of $271.71 for each waiter or bartender.

Taking into account defendants' obligation to establish and produce records regarding "charges purporting to be gratuities," see N.Y. COMP. CODES R. & REGS. tit. 12, § 146-2.18, and the evidentiary difficulties posed by defendants' failure to do so as a consequence of their default, I am satisfied that the aforementioned method results in a reasonable approximation of damages. Cf. Kim, 2015 WL 2222438, at *43-45 (finding a formula that relied on limited documentary evidence available to extrapolate tips diverted from banquet wait staff "entirely reasonable" considering "defendants' failure to maintain or produce required financial and other records").

As noted, Sermuks's testimony suggests that his first day of work for defendants was April 3, 2015, and that his last day was September 12, 2015. (See Tr. at 5, 7, 10.) Taking into account his alternating schedule of either two or three workdays per workweek, I estimate that Sermuks worked sixty days during his approximately twenty-three week employment period (12 weeks at 3 days per week + 11 weeks at 2 days per week + 2 additional days to account for Sept. 11 & Sept. 12, 2015). Accordingly, I respectfully recommend that he be awarded $16,302.60 in damages for the retained service charges ($271.71 x 60 days).[3]

As noted, Ozturk testified that she began working for defendants on an indeterminate date around mid-March 2015. (Id. at 12.) She further testified that her employment ended on an indeterminate date in October 2015. (Id. at 16.) Thus, I assume that Ozturk's first day of employment was Saturday, March 14, 2015 and that her last workday was Friday, October 16, 2015. I estimate that Ozturk worked sixty-three days during this thirty-one week period (31 weeks x 2 days per week + 1 additional day) and respectfully recommend that she be awarded $17,117.73 in retained gratuities ($271.71 x 63 days).

3. Statutory Penalties

Both plaintiffs affirm that they never received wage notices or wage statements in compliance with the NYLL. (See Sermuks Decl. ¶¶ 14-15; Ozturk Decl. ¶¶ 13-14; see also Tr. at 4-5, 16.) Sermuks requests $2,500 in statutory penalties for defendants' violations of the wage notice provision, § 195(1), and $5,000 for defendants' violations of the wage statement provision, § 195(3). (Naydenskiy Decl. ¶ 9.) Ozturk requests $3,150 for defendants' wage notice violations and $5,000 for the wage statement violations. (Id. ¶ 10.)

---

[3] Although plaintiffs have only requested $13,585.50 in retained gratuities damages for Sermuks, the higher amount recommended more accurately accords with his testimony. Plaintiffs, for example, do not credit Sermuks for any days worked in September 2015. (See Naydenskiy Decl. ¶ 9.)

NYLL § 198(1-b) prescribes that "[i]f any employee is not provided within ten business days of his or her first day of employment a notice as required by [§ 195(1)], he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars . . . ." N.Y. LAB. LAW § 198(1-b). As explained supra, I have estimated that Sermuks worked sixty days during his approximately twenty-three week employment period, and that Ozturk worked sixty-three days during her approximately thirty-one week employment period. Accordingly, I respectfully recommend that Sermuks be awarded $3,000 and that Ozturk be awarded $3,150 for defendants' wage notice violations.

With respect to damages for defendants' failure to provide wage statements, NYLL § 198(1-d) prescribes that "[i]f any employee is not provided a statement or statements as required by [§ 195(3)], he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars . . . ." N.Y. LAB. LAW § 198(1-d). Accordingly, I respectfully recommend that each plaintiff be awarded the statutory maximum of $5,000.

4. Liquidated Damages

Plaintiffs request liquidated damages under both the FLSA and the NYLL. (See Naydenskiy Decl. ¶¶ 9-10.) Ultimately, because compensatory damages under the FLSA are $144 for Sermuks and $10 for Ozturk, the effect of a double award of liquidated damages is modest. Nonetheless, there is a split as to the appropriateness of such double awards among courts in this district. See, e.g., Hererra v. Tri-State Kitchen and Bath, Inc., No. 14 CV 1695, 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (noting the "emerging trend" towards denying cumulative recovery of liquidated damages); Man Wei Shiu v. New Peking Taste Inc.,

No. 11 CV 1175, 2014 WL 652355, at *13 (E.D.N.Y. Feb. 19, 2014) (discussing the divide and citing cases on both sides of the issue). Because both statutes employ a similar standard to award liquidated damages equaling 100% of the wages due, see 29 U.S.C. § 260, N.Y LAB. LAW § 663(1), there is no meaningful distinction between the two provisions. See Khan v. Pizza Party Inc., No. 15 CV 3470, 2016 WL 4597479, at *3-5 (E.D.N.Y. Aug. 16, 2016), adopted by 2016 WL 4596001 (E.D.N.Y. Sept. 1, 2016) (explaining how relatively recent amendments to NYLL § 663 affect the cumulative liquidated damages analysis); Man Wei Shiu, 2014 WL 652355, at *13 ("Both forms of damages seek to deter wage-and-hour violations in a manner calculated to compensate the party harmed . . . . [T]here is no meaningful distinction between the two forms of damages.); Gunawan, 897 F. Supp. 2d at 91 n.11 ("To the extent the federal and state statutes now provide for essentially identical remedies with respect to liquidated damages, it is harder to argue that they are designed to compensate a plaintiff for disparate harms.") Therefore, I respectfully recommend that, as a consequence of defendants' default, plaintiffs be awarded liquidated damages under the NYLL, which provides for a higher award taking into account the damages for retained gratuities under § 196-d. See Khan, 2016 WL 4597479, at *5 n.9 (explaining that "the court should choose whichever statute provides the higher award"). I specifically recommend that Sermuks be awarded $16,446.60 ($144 + $16,302.60) and that Ozturk be awarded $17,127.73 ($10 + $17,117.73) in liquidated damages under the state law.

5. Prejudgment Interest

Plaintiffs also request and are entitled to prejudgment interest under the NYLL. See N.Y. LAB. LAW § 663; Fermin, 93 F. Supp. 3d at 48 ("In contrast to the FLSA, the NYLL permits an award of both liquidated damages and pre-judgment interest.") '"Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages

awarded under the state law.'" Fermin, 93 F. Supp. 3d at 49 (quoting Mejia v. East Manor USA Inc., No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), adopted by 2013 WL 2152176 (May 17, 2013)) (internal brackets removed).

The statutory rate of interest is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. Id. § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. See Fermin, 93 F. Supp. 3d at 49; Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011), adopted by 2011 WL 2038973 (S.D.N.Y. May 24, 2011). I determine the midpoint of Sermuks's employment to be June 24, 2015. I therefore respectfully recommend that prejudgment interest at the rate of nine percent per annum be awarded on his compensatory damages of $16,446.60 from June 24, 2015 to the date of the entry of judgment. This amounts to a per diem interest rate of $45.06 ($16,446.60 / 365). I determine the midpoint of Ozturk's employment to be July 1, 2015. I therefore recommend that she be awarded prejudgment interest at the rate of nine percent per annum on her compensatory damages of $17,127.73 from July 1, 2015 to the date of the entry of judgment. This amounts to a per diem interest rate of $46.93 ($17,127.73 / 365).

6. Post-judgment Interest

Plaintiffs also request and are entitled to an award of post-judgment interest. (See Compl. at 14.) 28 U.S.C. § 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

System, for the calendar week preceding[ ] the date of the judgment" Id. Thus, I respectfully recommend that plaintiffs be awarded statutory post-judgment interest. See Fermin, 93 F. Supp. 3d at 53 (finding that post-judgment interest is mandatory).

7. Attorney's Fees & Costs

a. Fees

Plaintiffs request an award of $3,400 in attorney's fees. Both the FLSA and NYLL provide for recovery of reasonable attorney's fees. See 29 U.S.C. § 216(b); N.Y. LAB. LAW § 663. In calculating a fee award, the court must first establish a reasonable hourly rate, which is "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008). "The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 894 (1984)). "Court have broad discretion to assess the reasonableness of each component of a fee award." Jaramillo v. Banana King Rest. Corp., No. 12 CV 5649, 2014 WL 2993450, at *8 (E.D.N.Y. June 30, 2015) (citing Siemieniewicz v. CAZ Contracting Corp., No. 11 CV 704, 2012 WL 5183375, at *15 (E.D.N.Y. Sept. 21, 2012), adopted as modified by 2012 WL 5183000 (E.D.N.Y. Oct. 18, 2012)).

Here, plaintiffs request an hourly rate of $250 for attorney Gennadiy Naydenskiy. (See Pl.'s Mem. at 13.) Mr. Naydenskiy graduated from law school and was admitted to practice in 2013, and founded Naydenskiy Law Group in 2014. (Id. at 13-14.) His practice focuses on wage and hour litigation. (Id. at 13-14.) Based on my review of the rates awarded to lawyers of similar experience in relatively straightforward wage and hour defaults, I respectfully

recommend that Mr. Naydenskiy's hourly rate be reduced to $200. See Mahoney v. Amekk Corp., No. 14 CV 4131, 2016 WL 6585810, at *18-19 (E.D.N.Y. Sept. 30, 2016), adopted by 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (reducing hourly rate of attorney admitted in 2014 to $150); Lopez v. PMMT Inc., No. 14 CV 2057, 2016 WL 7633264, at *15 (E.D.N.Y. Aug. 25, 2016), adopted by 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (reducing hourly rate of attorney with six years of experience to $225); Koszkos v. Janton Indus., Inc., No. 15 CV 1700, 2016 WL 4444329, at *8 (E.D.N.Y. Aug. 3, 2016), adopted by 2016 WL 4444782 (E.D.N.Y. Aug. 23, 2016) (reducing hourly rates to $200 and $175, respectively, for attorneys with five and two years of experience).

b. Hours

A fee applicant bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). The court must assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation. See Jaramillo, 2014 WL 2993450, at *9; Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). As required, Mr. Naydenskiy has submitted contemporaneous billing records to support the fee application. (See Billing Records, filed June 16, 2016 ("Billing Records"), annexed as Ex. F to Naydenskiy Decl.) The records reflect 13.6 hours of attorney time incurred meeting with the clients, investigating the case, drafting the complaint, and drafting the default judgment motion and supporting documentation. (See id.) After a review of the records and case law, I find the number of hours Mr. Naydenskiy spent to be reasonable. See, e.g., Lopez, 2016 WL 7633264, at *16 (finding 25.6 attorney hours reasonable in wage and hour default); Cortes v. Warb Corp., No. 14 CV

7562, 2016 WL 1266596, at *6 (E.D.N.Y. Mar. 15, 2016), adopted by 2016 WL 1258484 (E.D.N.Y. Mar. 30, 2015) ("Generally, the high-end amount of hours spent on cases in a similar procedural posture is no more than 55 hours total.") (internal marks and citation omitted). Accordingly, I respectfully recommend that plaintiffs be awarded $2,720 in attorney's fees (13.6 hours x $200 per hour).

c. Costs

Finally, plaintiffs request $543 in costs. (See Pls.' Mem. at 14.) Both the FLSA and NYLL provide for recovery of costs. 29 U.S.C. § 216(b); N.Y. LAB. LAW § 663(1). "[O]nly those costs that are tied to identifiable, out-of-pocket disbursements are recoverable." Jemine, 901 F. Supp. 2d at 393 (internal quotation marks and citation omitted). Plaintiffs' costs consist of $400 for the court's filing fee, $75 for service of process on defendants on November 16, 2015, and $68 for supplemental service of process on Orion Caterers on January 13, 2016. (See Billing Records). Court filing and service fees are routinely recoverable. See Jaramillo, 2016 WL 2993450, at *9. Nonetheless, the fee for supplemental service on Orion Caterers was incurred because plaintiffs were alerted by the Clerk's Office that the initial method of service was defective. (See Status Report, dated Jan. 20, 2016.) In light of this error, I respectfully recommend that plaintiffs be awarded $475 in costs, which excludes the fee for supplemental service of process.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that plaintiffs' motion be granted and that default judgments be entered against all defendants. Regarding damages, I recommend that Sermuks be awarded $40,893.20, consisting of $144 in unpaid overtime compensation, $16,302.60 in retained gratuities, $3,000 in statutory penalties for wage notice

violations, $5,000 in statutory penalties for wage statement violations, and $16,446.60 in liquidated damages under state law. I further recommend that he be awarded prejudgment interest at the rate of nine percent per annum on his compensatory damages of $16,446.60 accruing from June 24, 2015 to the date of the entry of judgment. With respect to Ozturk, I recommend that she be awarded $42,405.46, consisting of $10 in unpaid overtime compensation, $17,117.73 in retained gratuities, $3,150 in statutory penalties for wage notice violations, $5,000 in statutory penalties for wage statement violations, and $17,127.73 in liquidated damages under state law. I also recommend that she be awarded prejudgment interest on her compensatory damages of $17,127.73 at the rate of nine percent per annum accruing from July 1, 2015 to the date of the entry of judgment. Finally, I respectfully recommend that plaintiffs be jointly awarded $2,720 in attorney's fees and $475 in costs.

Plaintiffs are directed to serve copies of this Report and Recommendation on defendants upon receipt. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Dearie and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/

ROBERT M. LEVY
U.S. Magistrate Judge

Dated: Brooklyn, New York
February 2, 2017