UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EDGARS SERMUKS and OLGA OZTURK,
Individually and On Behalf Of All Others
Similarly Situated,

                    Plaintiffs,

   -against-

ORION CATERERS, INC., EUGENE
STRASCHLOW, and TSILYA
POVELETSKIY,

                    Defendants.
----------------------------------------------------------X

REPORT AND RECOMMENDATION

15 CV 6461 (RJD)(RML)

*handwritten annotation:* 11/28/17 — Adopted without qualification. Plaintiffs' renewed motion to be filed within 30 days. *So ordered.* s/ RJD

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ NOV 28 2017 ★
BROOKLYN OFFICE

LEVY, United States Magistrate Judge:

      By order dated July 20, 2017, the Honorable Raymond J. Dearie, United States District Judge, referred plaintiffs' motion for leave to amend the case caption and default judgment, to correct alleged misspellings of the defendants' names, to me for a report and recommendation. (See Order, dated July 20, 2017.) This motion is somewhat unusual insofar as it comes nearly five months after the default judgment was issued. For the reasons explained below, I respectfully recommend that plaintiffs' motion be denied, without prejudice and with leave to file a new motion that provides sufficient, properly authenticated evidence demonstrating that the amendments correct what they assert were mere misspellings.

## BACKGROUND AND FACTS

      Plaintiffs filed this action on November 11, 2015, asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), N.Y. LAB. LAW §§ 190 et seq., 650 et seq. (See Compl. ¶¶ 1–2.) According to the uncontested complaint, individual defendants Eugene Straschlow and Tsilya Poveletskiy owned

and operated a catering hall business at 2555 McDonald Avenue in Brooklyn, New York. (See id. ¶¶ 8, 9–10, 14.) Defendant Orion Caterers is a New York State domestic corporation with its principal office and place of business located at the aforementioned address. (Id. ¶ 8.) Defendants Straschlow and Poveletskiy were alleged to be the owners, chairpersons, chief executive officers, managers, and/or operators of defendant Orion Caterers. (Id. ¶¶ 9–10.)

Plaintiffs alleged that they were employed by defendants as banquet waiters and bartenders in 2015. (Id. ¶¶ 6–7.) They claimed that defendants: (1) failed to compensate them at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty per workweek (id. ¶¶ 19–21, 45–54); (2) retained gratuities and "charges purported to be gratuities" in violation of the NYLL (id. ¶¶ 22–26, 55–58); and (3) failed to furnish proper wage notices and wage statements as required by the NYLL (id. ¶¶ 27–28, 59–62).

Defendants Straschlow and Poveletskiy were served via "deliver and mail" on November 17 and 18, 2015. (See Affirmation of Gennadiy Naydenskiy, Esq. in Support of Request for Certificate of Default, dated Jan. 6, 2015 [sic], ¶ 2; see also N.Y. C.P.L.R. § 308(2).) Orion Caterers was served via service on the New York State Secretary of State on January 14, 2016. (See Status Report, dated Jan. 20, 2016; Affidavit of Service of Sean Warner, sworn to Jan. 14, 2016, annexed as Ex. A to Affirmation of Gennadiy Naydenskiy, Esq. in Support of Request for Certificate of Default, dated Feb. 22, 2015 [sic]; see also N.Y. BUS. CORP. LAW § 306(b)(1).) On March 14, 2016, the Clerk of the Court entered a certificate of default against all defendants. (Certificate of Default, dated Mar. 14, 2016.)

On June 16, 2016, plaintiffs moved for a default judgment. (See Declaration of Gennadiy Naydenskiy, Esq., dated June 16, 2016, ¶¶ 9–11; Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, dated June 16, 2016, at 7–16.) The court held a

damages hearing on November 18, 2016. (See Minute Entry, dated Nov. 18, 2016; Transcript of Proceedings held on Nov. 18, 2016, filed Dec. 19, 2016.) Despite multiple notices (see Orders, dated Sept. 8 & Sept. 27, 2016), defendants did not appear at the hearing.

On February 2, 2017, I issued a report and recommendation that plaintiffs' motion be granted and that default judgments be entered against all defendants. With respect to damages, I recommended that Sermuks be awarded $40,893.20: $144 in unpaid overtime compensation, $16,302.60 in retained gratuities, $3,000 in statutory penalties for wage notice violations, $5,000 in statutory penalties for wage statement violations, and $16,446.60 in liquidated damages under state law. I also recommended that he be awarded prejudgment interest at the rate of nine percent per annum on his compensatory damages of $16,446.60 accruing from June 24, 2015 to the date of the entry of judgment. I recommended that Ozturk be awarded $42,405.46: $10 in unpaid overtime compensation, $17,117.73 in retained gratuities, $3,150 in statutory penalties for wage notice violations, $5,000 in statutory penalties for wage statement violations, and $17,127.73 in liquidated damages under state law. I also recommended that she be awarded prejudgment interest on her compensatory damages of $17,127.73 at the rate of nine percent per annum accruing from July 1, 2015 to the date of the entry of judgment. Finally, I recommended that plaintiffs be awarded $2,720 in attorney's fees and $475 in costs. (Report and Recommendation, dated Feb. 2, 2017, Dkt. No. 16.) On February 23, 2017, Judge Dearie adopted my report and recommendation in its entirety and directed the Clerk to enter the default judgment and close the case. (See Order, dated Feb. 23, 2017.)

Since then, plaintiffs have been attempting to enforce the judgment. (Declaration of Gennadiy Naydenskiy, Esq., dated July 13, 2017 ("Naydenskiy 7/13/17 Decl."), Dkt. No. 19, ¶ 5.) In the course of these efforts, plaintiff Edgars Sermuks purportedly "has discovered that the

3

spelling[s] of the names of the aforementioned individual Defendants are Eugene Straschnow and Tsila Polevetsky" and not Eugene Straschlow and Tsilya Poveletskiy, as originally and currently named in the caption and the judgment. (Id.) Plaintiffs have provided no explanation as to how Sermuks discovered the alleged spelling errors. (See id.) Plaintiffs then ran a "skip trace" on the individual defendants,[1] which they claim has "corroborated the legal spellings of their names as Eugene Straschnow and Tsila Polevetsky." (Id. at ¶ 6.) They therefore move to amend the case caption and default judgment to replace the defendants' names with these "correct" spellings. (See Motion for Leave to Amend Case Caption and Defualt [sic] Judgment, dated July 13, 2017, Dkt. No. 18; Plaintiffs' Memorandum of Law in Support of Motion for Leave to Amend Case Caption and Default Judgment, dated July 13, 2017, Dkt. No. 20.)

## DISCUSSION

In analyzing motions to amend judgments to correct errors made by plaintiffs in naming defendants, courts have primarily focused on whether the error was simply a misnomer; this has been dubbed the "misnomer rule." See Munetz v. Eaton Yale & Towne, Inc., 57 F.R.D. 476, 479 (E.D. Pa. 1973) ("The 'misnomer' rule applies to situations in which the plaintiff has

---

[1] Running a skip trace (a.k.a. "skip-trace" or "skip-tracing") is "the process of developing new telephone, address, job or asset information on a customer, or verifying the accuracy of such information." Meyer v. Portfolio Recovery Assocs., 707 F.3d 1036, 1040 n.1 (9th Cir. 2012). A "skiptracing agency" is a "service that locates persons (such as delinquent debtors, missing heirs, witnesses, stockholders, bondholders, etc.) or missing assets (such as bank accounts)." BLACK'S LAW DICTIONARY 1514 (9th ed. 2009). Courts have on occasion cited evidence generated through skip traces when granting motions for alternative methods of service due to an inability to locate a physical address. See, e.g., Metromedia Co. v. Cowan, No. 13 CV 3787, 2013 WL 4780039, at *1 (S.D.N.Y. 2013). Skip traces can employ a wide variety of methods, ranging from basic online or public records searches to aggressive, in-person interviews with family and friends. See generally Randall Sullivan, The World's Best Bounty Hunter is 4'11". Here's How She Hunts, WIRED (Dec. 17, 2013), https://www.wired.com/2013/12/skip-tracing-ryan-mullen/; Jay MacDonald, Ron Brown, skip tracer, talks debt collecting, CREDITCARDS.COM (Aug. 3, 2012), https://www.creditcards.com/credit-card-news/skip-tracer-debt-collection-ron-brown-interview-1272.php.

4

actually sued and served the correct party, the party he intends to sue, but merely mistakenly has used the wrong name of the defendant in the caption of the complaint.") (collecting cases). The Second Circuit has held that, post-judgment, courts may apply the misnomer rule pursuant to their authority under Federal Rule of Civil Procedure 60(a).[2] See Robinson v. Sanctuary Music, 383 F. App'x 54, 57–58 (2d Cir. 2010) ("In this Circuit, in appropriate circumstances, a district court may employ this Rule to correct misnomers in a party's name.") (citing Fluoro Elec. Corp. v. Branford Assocs., 489 F.2d 320, 324–26 (2d Cir. 1973)); see also Braun v. Ultimate Jetcharters, LLC, 828 F.3d 501, 517 (6th Cir. 2016).

Under the misnomer rule, the court must determine whether the party actually selected the wrong defendant or instead mislabeled the right defendant; if the latter, the court may correct the misnomer in the party's name. Robinson, 383 F. App'x at 57 (citing Datskow v. Teledyne, Inc., 899 F.2d 1298, 1301 (2d Cir. 1990)). Important factors to consider include whether the plaintiff identifies the defendant in several ways, whether the complaint lists the defendant's correct address, and the degree of similarity between the name contained in the complaint and the actual name. Id.; see also Flynn v. Best Buy Auto Sales, 218 F.R.D. 94, 97 (E.D. Pa. 2003) ("The basic test under the misnomer rule is whether it would be reasonable to conclude that plaintiff had in mind the proper entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether the plaintiff actually meant to serve and sue a different person."[3]) (internal citations and quotation marks omitted).

---

[2] Rule 60(a) provides that "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." FED. R. CIV. P. 60(a).

[3] While the district court in Flynn concluded that correction of misnomers post-judgment was properly done under the aegis of Federal Rule of Civil Procedure 15, 218 F.R.D. at 96 n.3, I reference it here because courts apply the rule in the same substantive manner regardless of

Continued . . .

Here, plaintiffs have failed to demonstrate that they merely made a mistake as to the names of the individual defendants. The most important pieces of evidence they offer, the skip traces, have not been properly authenticated. As Federal Rule of Evidence 901(a) states, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). The only exceptions to this requirement are items of evidence that are self-authenticating, which require "no extrinsic evidence of authenticity in order to be admitted." FED. R. EVID. 902. Here, plaintiff's counsel claims that these documents are redacted skip traces, but offers no evidence to support a finding that the documents are, in fact, what he claims they are. (See Naydenskiy 7/13/17 Decl. ¶¶ 5–8.) These documents also do not fit into any of the recognized categories of self-authenticating evidence. See FED. R. EVID. 902(1)–(12). Plaintiffs have not even identified what agency, website or service they used to generate these skip traces, let alone explained the methods that were used to gather the information contained within them. The exhibits merely contain the header "Premium People Search." (See Naydenskiy 7/13/17 Decl., Exs. C & D.) Plaintiffs have failed, therefore, to authenticate the exhibits that they claim corroborate their proposed corrected spellings, meaning that they are inadmissible and the court *cannot* rely on them in its findings.[4]

---

whether they do so under Rule 15 or Rule 60(a). See, e.g., United States v. Edwards, 241 F.R.D. 146, 147–48 (E.D.N.Y. 2007) (applying misnomer rule post-judgment, prior to Second Circuit's holding in Robinson, and citing Flynn); see also Perez v. Sandals Resorts Int'l, Ltd., No. 11 CV 914, 2015 WL 94223, at *2 (E.D.N.Y. 2015) (Levy, M.J.) (citing Flynn and applying misnomer rule pre-judgment to correct errors in defendants' names under Rule 15).

[4] Plaintiffs' failure to authenticate these exhibits is especially significant considering the very low bar necessary to authenticate documentary evidence. See United States v. Maldonado-Rivera, 922 F.2d 934, 957 (2d Cir. 1990) ("In general, a document may not be admitted into evidence unless it is shown to be genuine. The requirement that the document be authenticated may be satisfied by evidence sufficient to support a finding that the matter in question is what its
Continued . . .

Even if plaintiffs had produced properly-authenticated versions of the exhibits they presented here, such exhibits would be insufficient by themselves without further explanation as to how they "corroborate" plaintiffs' claim.[5] In addition, plaintiffs have skipped an important step by failing to explain how or why they arrived at the conclusion that the original spelling in the case caption and judgment were inaccurate. Plaintiffs' counsel's statement that "Plaintiff Edgars Sermuks has discovered that the spelling[s] of the aforementioned individual Defendants are Eugene Straschnow and Tsila Polevetsky" is, by itself, not enough. (Naydenskiy 7/13/17 Decl. ¶ 5.) How exactly did Mr. Sermuks discover this, and why did he get it wrong in

---

proponent claims. This evidence may be direct or circumstantial, and the latter category may include distinctive characteristics of the document itself, such as the appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.") (internal citations and quotation marks omitted); see also SMS Audio, LLC v. Belson, No. 16 CV 81308, 2017 WL 1533971, at *3–*4 (S.D. Fla. 2017) (collecting cases permitting both testimonial and circumstantial evidence for authenticating web postings and electronically stored information).

[5] The skip trace exhibits are grossly insufficient. With respect to both individual defendants, plaintiffs have simply provided the "skip trace" results for the name they allege to be correct. (See Naydenskiy 7/27/17 Decl., Exs. C & D.) There are forty-nine total records for "Eugene Straschnow," several of which appear to be duplicates. (See Naydenskiy 7/27/17 Decl., Ex. C.) All this may indicate is that someone named "Eugene Straschnow" was, at some point in time, associated with the addresses listed. (Id.) To be sure, there *are* two results for this person associated with 2555 McDonald Avenue, Brooklyn, NY 11223-5938, which is the alleged address of the corporate defendant. (Id.) This might offer some support for the accuracy of this spelling—but not standing alone without any additional explanation. On their face, all these results indicate is that they were "reported" on March 3, 2010 and between March 22, 2010 and April 15, 2010. (Id.) What does it mean that they were "reported" on those dates? What is the court to make of the fact that there is no result "reported" for any more recent date associated with this address? (Id.) How is the court to be certain that the "Straschnow" associated with the 2555 McDonald Avenue address is not itself a misspelling that was "reported" in the spring of 2010 because of human error?

There are twenty-nine records for "Tsila Polevetsky," several of which appear to be duplicates. (See Naydenskiy 7/27/17 Decl., Ex. D.) All this may indicate is that someone named "Tsila Polevetsky" was associated with the addresses listed (these include locations in Brooklyn, Staten Island, New Jersey, Pennsylvania, and Sparrow Bush, NY.) (Id.) Moreover, not one of these records links "Tsila Polevetsky" to the address of the corporate defendant. (Id.) On what basis, then, is the court to conclude that this spelling is correct, or even that this person is in fact the person whom plaintiffs intended to name in this suit?

7

the first place? Counsel has provided no details, making it impossible to know whether there are additional corroborating facts that would support using these alternate spellings.

Ultimately, plaintiffs still bear the burden of showing that they properly identified the correct persons in the first instance and simply mislabeled them. Robinson, 383 F. App'x at 57. Put another way, plaintiffs must persuade the court that it is "reasonable to conclude that plaintiff had in mind the proper entity or person, merely made a mistake as to the name, and actually served the entity or person intended." Flynn, 218 F.R.D. at 97. Based on the motion papers and supporting documents before me, plaintiffs have not met their burden.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs' motion be denied, without prejudice and with leave to file a new motion that provides sufficient, properly authenticated evidence to satisfy their burden. Plaintiffs are directed to serve copies of this Report and Recommendation on defendants upon receipt. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Dearie and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
October 27, 2017